IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal Action No. 11-00012-KD |
| | ) | |
| LEROY WATERS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This action is before the Court on the motion for partial suppression and a taint hearing as to the Government's invasion of privilege filed by defendant Chris Vernon (doc. 159), defendant Jeff Vernon's joinder in the motion (doc. 181), the Government's response (doc. 201), Chris Vernon's memorandum in further support of the motion (doc. 234), Jeff Vernon's joinder in the memorandum (doc. 236), and the United States' memorandum in further support of its response (doc. 315). A hearing was held on December 13, 2011. Defendant Chris Vernon and his defense counsel Jackson R. Sharman III, defendant Jeff Vernon and his defense counsel James R. Sturdivant, and counsel for the United States, Assistant United States Attorney Adam W. Overstreet participated in the hearing.[1]

The defendants seek to suppress the government's use of allegedly ill-gotten privileged material.[2] Specifically, the defendants request that the court order: 1) the government to cease review of the material until appropriate measures are taken to protect privileged material; 2) the

---

[1] Other counsel were present but the Court identifies only counsel who participated in oral argument.

[2] At the hearing, the defendants submitted the sixty-six (66) .PDF documents for in camera review. On Friday, December 16, 2011, the government submitted for in camera review, 407 pages of potentially privileged documents in the government's possession. The government agrees that the majority are privileged but questioned whether the privilege applied to nine specific communications.

government to segregate and return all potentially privileged material; 3) the implementation of a schedule for a privilege log and appoint a special master to hear objections to same which ultimately requires the government to destroy any privileged material in its possession; 4) suppression of all privileged materials seized from Medfusion; 5) and order that defendants be allowed to use privileged material without generally waiving the attorney-client privilege.[3]

The defendants have spent most of their brief explaining the government's deficiencies in the handling of electronically stored information (ESI). Specifically, the defendants outline in great detail what the government should have done when they seized the records of Medfusion in order to avoid coming in contact with attorney-client privileged information. Apparently, the government seized the ESI records and then initially searched looking for relevant information without concern for finding privileged information.[4]

The defendants initially identified eleven (11) emails in the government's possession that appear to contain privileged information. (Doc. 159, p. 10-11). In a "privilege log" (doc. 321), the defendants contend that they have identified "over four-hundred pages spread across sixty-six documents that either contain privileged material or indicate affirmatively that the Government processed privileged material."[5] *Id*. at p. 3, ¶ 10. The defendants further contend that as of December 9, 2011 "the extent of the Government's intrusion is presently unknown." (*Id*., ¶ 12).

---

[3] These remedies were identified in defendants' motion and memorandum (docs. 159, 234) and reiterated at oral argument. Also, at oral argument, defendants asserted that the privileged material should be excluded, that a taint hearing was still necessary, and that a new prosecution team should take over the prosecution.

[4] Defendants contend that the government seized, among other items, four hard drives and the entire email server. (Doc. 159, p. 7; doc. 234, p. 1).

[5] The defendants allege that the government provided more than seventy-five (75) privileged documents in their disclosures, however the specific nature of these documents has not been identified.

The government responds by arguing 1) that the defendants' objection to the government's possession of privileged material is untimely, thus they have waived the attorney-client privilege; 2) that only a "negligible"[6] amount of privileged information is at issue; 3) that the defendants have no Sixth Amendment right for the government not to intrude on the attorney-client privilege during a search and seizure; and 4) even if the defendants did have such a right, the defendants have failed to show prejudice[7] whereas to warrant the sanctions requested. (doc. 201). The government also suggests a procedure for prospective review of potential attorney-client material which would include review by an FBI "filter paralegal" and a "filter AUSA". (*Id.*, p. 12).

The court's review of the dispute regarding how the materials will be processed is moot, in that the case is now set for trial and presumably the investigatory stage is mostly complete. Thus, the only remaining issue is whether the government has possession of any privileged information and whether they have made any use of this information that is detrimental to the defendants.

Waiver

In *United States v. Ary*, 518 F. 3d 775 (10th Cir. 2008), the Court of Appeals for the Tenth Circuit identified three factors which courts have considered when deciding waiver of privilege as to material involuntarily disclosed: "(1) the specificity with which the defendant identifies the material; (2) the expediency by which the defendant informs the government that it seized protected material; and (3) the expediency by which the defendant seeks judicial action to enforce the

---

[6] The government states that it has non-privileged information obtained from 215,000 pages of hard copy documents, 15 computer hard drives, and 70 plus witness interviews and that the "defendants have not proven if and how the [government] has used a *de minimus* amount of alleged attorney-client material to their 'substantial detriment'". (Doc. 201, p. 11).

[7] At oral argument and in the response, the government also argued that there was no substantial prejudice to defendants because the alleged privileged information did not include trial preparation, defense strategies, theories, or tactics, and because the allegedly privileged information has not been used at trial.

protection." *Id*. at 783. The circuit court in *Ary* also stated that the "party asserting the . . . attorney-client privilege must pursue all reasonable means to preserve the confidentiality of the material." *Id*. at 785.

The court finds that the defendants did not waive their attorney-client privilege as to the documents seized by waiting to assert such privilege until after they were indicted instead of when the search occurred. While there is reason to believe that the defendants may have known that ESI was seized, no inventory of exactly what ESI was seized was provided to the defendants until arraignment, and even now there is a dispute whether that inventory is complete.[8]

Moreover, when defendants became aware that the hard drives and email server had been imaged, they promptly communicated with the government and began to identify certain documents allegedly privileged, *i.e.*, the eleven emails, and ultimately filed the instant motion.[9]

<u>Sixth Amendment Violation</u>

The court does not find that a Sixth Amendment violation has occurred; thus, sanctions are

---

[8] The defendants argue that Chris Vernon had no actual notice and no basis to believe that the government had seized ESI during the October 2009 search because the government's inventory did not list the hard drives or email server, the defendants were not told during their interviews that the hard drives or servers were being copied for off-site analysis, and the return receipt for the materials did not include any reference to ESI. (Doc. 234, p. 4-8). The government responds that all seized documents were returned on December 8, 2009, after scanning and copying, and thus the defendants had access to those documents since that time and took no action until after indictment.

[9] The docket indicates that Chris and Jeff Vernon were arraigned April 20, 2011. The order on arraignment provided that discovery would be disclosed by May 2, 2011. (Docs. 59, 69). Defendants' evidence shows that on April 28, 2011, defense counsel began to communicate with the government in regard to review of the information on twenty CD's containing the government's initial disclosures that appears to have been provided to defendants around April 20, 2011, difficulties with passwords and access to this information, missing emails, and potentially privileged materials seized at the search. (Doc. 159-4, Exh. D, Letter from Jackson R. Sharman to AUSA Gregory A. Bordenkircher). On June 24, 2011, defendant Chris Vernon filed the motion now before the Court. (Doc. 159).

4

not warranted.[10] A constitutional violation occurs only when the government intentionally intrudes into an attorney-client relationship and therein obtains confidential information regarding the defense of the allegations and then uses that information to the defendants' detriment. *United States v. Noriega*, 764 F.Supp. 1480, 1488 (S.D. Fla., 1991) citing *Weatherford v. Bursey*, 429 U.S. 545, 558, 97 S.Ct. 837, 845 (1977). "Because intrusions into the attorney-client relationship are not per se unconstitutional, establishing a Sixth Amendment violation requires some showing of prejudice in terms of injury to the defendant or benefit to the State." *Id*.; s*ee United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665 (1981) (where there is no demonstrable prejudice to the defendant or a substantial threat of same, dismissing the indictment as a sanction for government intrusion into the attorney-client relationship is not appropriate); *United States v. Ofshe*, 817 F. 2d 1508, 1515 (11th Cir. 1987) (defendants bear the burden of establishing that privileged material was given to the prosecution team and that defendants have been prejudiced).

First, the government's intrusion into the attorney-client relationship <u>may</u> have been negligent, or even grossly so, but there is no evidence that it was intentional. There is no evidence that the government was on actual notice that the ESI would contain privileged information, although it would appear that the government should have anticipated such and set up appropriate safeguards. Such safeguards are articulated in case law as well as the Department of Justice policy manual in order to avoid the current situation. With that said, the fact that the government did not act in accordance with their own policy is not a basis for finding a Sixth Amendment violation. As previously stated the intrusion must be intentional. There is no evidence that the government set out to discover privileged information through the search.

Second, because the trial has not been held, defendants have not shown that any privileged

---

[10] This includes defendants' request to be allowed to use privileged material without waiving the attorney-client privilege.

information has been used to their detriment at trial. Thus, defendants must show that they have sustained "substantial detriment" in "some other way". This they have not done except to assert that the prosecution team is now presumed to be tainted by the alleged access to privileged information.[11] However, "so long as no evidence stemming from the breach of the privilege is introduced at trial, no prejudice results". *United States v. White*, 970 F.2d 328, 336 (7th Cir. 1992). Additionally, there is no evidence that obtaining the allegedly confidential information in the ESI resulted in a "benefit to the prosecution." *United States v. Noriega*, 764 F. Supp. at 1489. Moreover, the government appears to have put in place protections after the existence of the potentially privileged communications in the ESI was brought to its attention by the defendants.

Privilege Assertion

Regardless of whether a Sixth Amendment violation has been established, the defendants may assert the attorney-client privilege to prevent the government from using any information gained from the privileged documents. Defendants have asserted the privilege. Thus, the issue to be resolved is whether the government has privileged information which should be suppressed.

The attorney-client privilege is designed "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Thus, the privilege protects disclosures that a client makes to his or its[12] attorney, in confidence, for the purpose of securing legal advice or assistance. *In re Grand Jury*, 845 F.2d 896, 897 (11th Cir. 1988). The privilege also extends to legal advice communicated by an attorney to his client, *see*

---

[11] In this regard, the defendants seek a taint hearing to establish whether Special Agent Kennedy who seized and reviewed the ESI has provided confidential and protected information to the prosecution team including the Assistant United States attorneys.

[12] *See Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970) ("Numerous cases sustain the proposition that a corporation is a client for the purpose of invoking the privilege.").

6

*Upjohn*, 449 U.S. at 390 ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.").

Communications between and attorney and his client for a purpose other than seeking or providing legal advice is not within the privilege. *See In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2008 WL 1995058, at *4 (M.D. Fla. May 7, 2008) (quoting "a learned treatise" for the proposition that "there is general agreement that the protection of the privilege applies only if the primary or predominate purpose of the attorney-client consultations is to seek legal advice or assistance"); *see also Visa U.S.A., Inc. v. First Data Corp.*, No. C-02-1786JSW (EMC), 2004 WL 1878209, at *8 n.4 (N.D. Cal. Aug. 23, 2004) (acknowledging that "there are substantial policy reasons for holding that business documents submitted for attorney review are not by that virtue automatically exempt as privileged or work product protected communications"); *United States v. Int'l Bus. Machs. Corp.*, 66 F.R.D. 206, 212 (S.D.N.Y. 1974) ("the attorney must give predominately legal advice . . . not solely, or even largely, business advice" (citation and quotation marks omitted)).

The burdens of proving the existence of an attorney-client relationship and the confidentiality of communications rest with the party invoking the privilege. *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991). A communication is protected by the attorney-client privilege and protected from Government intrusion if it is "(1) intended to remain confidential and (2) under the circumstances was reasonably expected and understood to be confidential." *United States v. Bell*, 776 F.2d 965, 971 (11th Cir. 1985); *see also Schaltenbrand*, 930 F.2d at 1562 ("In order to show that communications made to an attorney are within the privilege, it must be shown that the communication was made to him confidentially, in his professional capacity, for the purpose of securing legal advice or assistance." (citation and quotation

7

marks omitted)).

Communications made in furtherance of an ongoing or intended crime or fraud are not protected by the attorney-client privilege. *See In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir. 1987). Courts in the Eleventh Circuit employ a two-part test to examine the applicability of the crime-fraud exception. *First*, there must be a prima facie showing that (a) the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel; (b) the client was planning such conduct when he sought the advice of counsel; or (c) the client committed a crime or fraud subsequent to receiving the benefit of counsel's advice. *Second*, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it. *Id.* The requirement that the attorney's legal advice must be related to the client's criminal or fraudulent conduct "should not be interpreted restrictively." *Id.* at 1227.

With respect to the two-part test articulated in *Schroeder*, the Eleventh Circuit has held that "[t]he first prong is satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed," while the second prong is satisfied "by a showing that the communication is related to the criminal or fraudulent activity established under the first prong." *Id.* at 1226-27. For the exception to apply, an attorney need not be aware that his client intends for the advice to be used to effect a crime or fraud; the client's purpose, not the attorney's awareness thereof, is determinative. *Id.* at 1227; *see also In re Grand Jury* (G.J. No. 87-03-A), 845 F.2d 896, 898 (11th Cir. 1988) ("[T]he government need not show that the attorneys had any knowledge of or involvement in the wrongdoing in order to pierce the privilege.").

Currently, the government has submitted 407 pages of Medfusion documents of which they allege that 360 pages are privileged and question whether the privilege applies to the remaining 47

8

pages. The court has reviewed, for purposes of determining privilege, only those 47 pages which the government has identified as possibly privileged material. As a tentative determination, the court agrees that Medfusion pages 000027-28, 29-30, 36-37, 49-51, 69-72, 169, and 314-343 are not privileged and may be disclosed to the prosecution team. Also as a tentative determination, the court disagrees with the government's taint team as to Medfusion pages 0000352, and 402-403, and finds that these documents are privileged and should not be disclosed to the prosecution team. The government has failed to make a prima facie case that the crime-fraud exception applies to these documents.

Defendants have submitted 66 documents which they assert are subject to protection by the attorney-client privilege. The court has reviewed those documents and makes the following tentative findings:

| Document | Tentative decision |
|---|---|
| 1 | Not privileged. |
| 2-7 | Privileged, but the crime-fraud exception may apply. |
| 8-23 | Privileged communication regarding the ECM litigation. |
| 24-25 | Privileged, but crime-fraud exception may apply. |
| 26-29 | Privileged communication regarding HIPAA issues. |
| 30 | Cannot be determined until purpose of creating the document is explained. |
| 31-33 | Privileged, but may be subject to crime-fraud exception. |
| 34-51 | Privileged. |
| 52-54 | Unable to determine whether document was prepared by attorney for legal advice or business advice. |
| 55 | Not privileged. |
| 56-65 | Privileged. |

| | |
|---|---|
| 66 | Unable to determine who prepared the document and for what purpose. |

On December 22, 2011, the court held a brief telephone conference with James R. Sturdivant, defense counsel for Jeff Vernon; Jackson Sharman, defense counsel for Chris Vernon and Assistant United States Attorney Steven Butler participating on behalf of the filter team established by the government. At the conference, the court explained that as to the 66 documents submitted by the defendants and 407 pages submitted by the government, it appeared there was no overlap.[13] In other words, it appears that the parties derived their documents from two different sources. The participants then agreed that they would exchange documents[14] with only the filter team to have possession of defendants' 66 documents, resolve whether these documents and other documents <u>not before the court</u> are protected by the attorney-client privilege, and inform the court promptly whether further assistance from the court is necessary on this issue.

**DONE** and **ORDERED** this the 22nd day of December, 2011.

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[13] The government stated that they did not conduct a taint review of hard copy documents in their possession. Defendants indicated that their review for privileged information was from the Rule 16(b) discovery.

[14] The court notes that defendants have not waived any right to assert the attorney-client privilege as to <u>any</u> documents by virtue of providing these 66 documents to the filter team.